JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Marvin Robinson, argues the trial court erred in granting the state's motion to enforce defendant's guilty plea to aggravated assault. We agree.
 {¶ 2} In 2002, defendant was indicted in four separate criminal cases: Case No. 407073, receiving stolen property of a motor vehicle; Case No. 410992, rape and kidnaping; Case No. 418814, drug trafficking; and the case which is the subject of this appeal, Case No. 418367, felonious assault. All four cases were combined and assigned to the trial court for disposition.
 {¶ 3} While defendant's state court cases were pending, he was the defendant in a separate criminal drug case pending in federal court. Defendant entered into a plea agreement with the United States and pled guilty to the amended charges in that case. Under federal guidelines, defendant faced a potential sentence of 15 years. Sentencing was set for August 19, 2002.
 {¶ 4} Just after he entered his plea in the federal matter, defendant entered a plea agreement in the case at bar. On June 17, 2002, the trial court conducted a hearing in which the details of that agreement were read into the record. The state dismissed all the charges against defendant in Case No. 410992. Defendant then pled guilty in Case No. 407073[1] and in Case No. 418814, which was amended to one count of drug trafficking.[2] In Case No. 418367, defendant pled guilty to an amended charge of aggravated assault,[3] instead of felonious assault. Also part of the agreement was the state's promise that any sentence defendant received in Case No. 418367, would run concurrent with the sentence he received in his federal case. Defendant makes no claim in the case at bar that his plea was not given intelligently or voluntarily.
 {¶ 5} On July 11, 2002, the trial court conducted a hearing in which it sentenced defendant to an eighteen-month prison term on his aggravated assault conviction. The trial court ordered that sentence to run concurrent with whatever sentence he received in his federal case.
 {¶ 6} In August, 2002, defendant filed a motion to vacate his guilty plea and sentence in Case No. 418367. Defendant asked to vacate his plea to aggravated assault because, under federal law, that conviction was an offense of violence, for which the federal sentencing guidelines would cause him to be deemed a career offender. With that classification, defendant faced a 15-year-sentence in his federal case. In his motion, defendant stated that, in exchange for the state not objecting to the vacation of his plea and sentence, he agreed "to re-enter his change of plea to aggravated assault following his federal sentencing." The court's docket indicates that defendant's motion was granted, with no objection by the state, on September 24, 2002. Thereafter, defendant was sentenced in federal court to a term of six years, to be served consecutive to any sentence he would subsequently receive in the state court Case No. 418367.
 {¶ 7} On October 13, 2002, the trial court held a hearing in which the state thought defendant was going to re-enter his guilty plea to the aggravated assault charge. The court began to read him his rights, but defendant then changed his mind and decided to go to trial. The trial court agreed and appointed a new attorney.
 {¶ 8} The state then filed a motion to enforce defendant's plea agreement. In that motion, the state asked the court either to enforce defendant's promise to re-enter his guilty plea or, in the alternative, to reinstate the original plea defendant gave on June 17, 2002. The court advised it would schedule a hearing on the motion, discussed discovery matters, and scheduled a trial date.
 {¶ 9} During a hearing on the state's motion to enforce, the state argued that defendant's promise to re-enter his guilty plea was enforceable under fundamental tenets of contract law. The trial court agreed and granted the state's motion. Defendant timely appeals the trial court's order. Because defendant's first two assignments of error are related, they are addressed together.
The trial court erred by convicting appellant after appellant was permitted to withdraw his guilty plea.
The trial court erred by not allowing appellant to exercise his statutory and constitutional rights to a jury trial.
 {¶ 10} Defendant argues the trial court erred by granting the state's motion to enforce his guilty plea to aggravated assault, despite his refusal to enter such a plea and his demand to exercise his constitutional right to a jury trial.
 {¶ 11} "A plea bargain itself is contractual in nature and subject to contract-law standards." State v. Butts (1996),112 Ohio App.3d 683, 686, 679 N.E.2d 1170, 1172; see Fanning v. Ins.Co. (1881), 37 Ohio St. 339.
 {¶ 12} A contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration." Perlmuter Printing Co. v. Strome, Inc.
(N.D.Ohio 1976), 436 F. Supp. 409, 414. A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract. Episcopal Retirement Homes, Inc. v. OhioDept. of Indus. Relations (1991), 61 Ohio St.3d 366, 369,575 N.E.2d 134.
 {¶ 13} Kostelnik v. Helper, 96 Ohio St.3d 1,2002-Ohio-2985, 770 N.E.2d 58, at ¶ 16; State v. Bolden, (Dec. 10, 1999), Portage App. No. 98-P-0059. "In order to determine whether a plea agreement has been breached, courts must examine what the parties reasonably understood at the time the defendant entered his guilty plea." State v. Woyan, (July 21, 1997), Athens App. No. 96 CA 1772, 1997 Ohio App. LEXIS 3182, at *10.
 {¶ 14} In its motion to enforce defendant's plea agreement in the case at bar, the state argued the court had to enforce one of defendant's two promises: either his original plea agreement entered on June 17, 2002[4] or his second agreement of August 2002, In response to his motion to vacate his plea, the state had agreed to allow defendant to have his original guilty plea vacated so he would not be classified as a career offender in federal court and thus would avoid a 15-year-sentence. In exchange for the state's promise, defendant had agreed to re-enter his guilty plea after he was sentenced in the federal court. That exchange was the basis of the second agreement.
 {¶ 15} At the hearing on its motion to enforce, the state argued that defendant had personally benefitted from its agreement to allow his June 17, 2002 plea to be vacated because he received a lesser sentence in his federal case. Defendant, the state argued, gave no consideration for the state's performance, however, because he refused to re-enter a guilty plea to the aggravated assault charge.
 {¶ 16} After the hearing, the trial court order granted the state's motion to enforce and stated, in part, as follows:
Hearing held on Prosecutor's motion to enforce plea. Motion is granted. The court's order found dated 9-20-02 which vacated defendant's plea and sentence is hereby vacated. Defendant's original plea and sentence are ordered into effect.
 {¶ 17} The transcripts of both plea hearings show that, in both agreements, part of the state's consideration for defendant's original plea was its promise that his sentence for aggravated assault would run concurrent with his federal sentence. Indeed, originally, the sentence specifically stated concurrent. That consideration failed. We cannot determine clearly from the record, however, whether defendant appreciated the possibility that the federal court might order its sentence consecutive to the sentence in the state court and, consequently, the state's promise of concurrent terms would be impossible to perform.
 {¶ 18} When the trial court ordered defendant's original plea and sentence back into effect, that sentence included the order that the terms would be concurrent with the sentence he received in federal court. Tr. 42. The execution of that order, however, was impossible once the federal court ordered the sentences to be consecutive.
 {¶ 19} The law is well settled that, "[w]hile in certain instances, legal impossibility of performance is a defense to the performance of a contract, and while a condition may be implied by which the promisor may be relieved from his unqualified obligation to perform, such condition is implied only in those cases where performance has been rendered impossible without his fault and when the difficulties could not reasonably have been foreseen." London Lancashire Indem. Co. v. Bd. of Commrs,
(1923), 107 Ohio St. 51, 64, 140 N.E. 672, 676. Under London Lancashire Indem. Co., the legal impossibility of a concurrent sentence is certainly not the defendant's fault.
 {¶ 20} The trial court also erred because after it vacated defendant's first plea, it never again advised defendant in accordance with Crim.R. 11(c).[5] Senich, supra.;Stewart, supra. Because the state's consideration for defendant re-entering a guilty plea had changed with the events of the August 2002 plea agreement, the trial court was obligated to inform defendant of the constitutional guarantees he would be waiving by entering a guilty plea. Because he was not so informed, defendant argues, he was denied his constitutional right to a jury trial.
 {¶ 21} In addition to considerations of contract law, the taking of defendant's plea must also conform with Crim.R. 11. "The underlying purpose of Crim.R. 11(C)[6] is to ensure that certain information is conveyed to a defendant so that he can make a voluntary and intelligent decision regarding whether or not to plead guilty." State v. Sample, Cuyahoga App. No. 81357, 2003-Ohio-2756, 2003 Ohio App. LEXIS 2475, at *3; Statev. Ballard (1981), 66 Ohio St.2d 473, 423 N.E.2d 115. Crim.R. 11(C)(2), moreover, outlines the procedure for assuring that a defendant's guilty plea is made knowingly and voluntarily. The rule states:
(2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept such plea without first addressing the defendant personally and:
Determining that he is making the plea voluntarily, with understanding of the nature of the charge and of the maximum penalty involved, and, if applicable, that he is not eligible for probation.
Informing him of and determining that he understands the effect of his plea of guilty or no contest, and that the court upon acceptance of the plea may proceed with judgment and sentence.
 {¶ 22} Informing him and determining that he understands that by his plea he is waiving his rights to jury trial, to confront witnesses against him, to have compulsory process for obtaining witnesses in his favor, and to require the state to prove his guilt beyond a reasonable doubt at a trial at which he cannot be compelled to testify against himself.
 {¶ 23} Courts distinguish between constitutional and non-constitutional rights.[7] State v. Senich, Cuyahoga App. No. 82581, 2003-Ohio-5082; State v. Stewart (1977),51 Ohio St.2d 86, 93, 364 N.E.2d 1163. As stated in Crim.R. 11(C)(2)(c), the guaranteed federal constitutional rights are: the privilege against self-incrimination, the right to trial by jury, the right to confront one's accusers, and the right of compulsory process of witnesses. Boykin v. Alabama (1969),395 U.S. 238, 23 L.Ed.2d 274, 89 S.Ct. 1709; State v. Nero (1990),56 Ohio St.3d 106, 564 N.E.2d 474; State v. Sample, Cuyahoga App. No. 81357, 2003-Ohio-2756. The rule requires the trial court to engage in a personal and meaningful dialogue with the defendant informing him of the constitutional guarantees he waives by entering a guilty plea. When a court advises a defendant of his constitutional rights, strict compliance with Crim.R. 11(C) is mandatory; however, a court need only substantially comply with the non-constitutional requirements of Crim.R. 11(C)(2). Sample, supra.
 {¶ 24} The record shows the trial court failed to provide the information required by Crim.R. 11 and to insure that the plea in the context of new circumstances was voluntary and intelligent. Without another intelligent and voluntary plea by defendant, after it had vacated his original plea, the trial court could not re-instate or enforce that original plea agreement.
 {¶ 25} We acknowledge that the state made a significant gesture of goodwill when it had previously allowed defendant to withdraw his guilty plea in order to avoid a 15-year-sentence in federal court. However, the only voluntary and intelligent plea defendant gave was in June 2002; that plea was vacated in August 2002. It is true that defendant reaped the benefit of a lesser sentence in federal court, but he did not receive the benefit of the concurrent sentence he bargained for. We will not force defendant now to re-enter a plea originally given under different circumstances.
 {¶ 26} Defendant's first and second assignments of error are sustained. Accordingly, defendant's plea is vacated and this matter remanded for further proceedings consistent with this opinion. Because we find merit in defendant's first two assignments of error, we do not address his third assignment of error.[8]
 {¶ 27} Judgment accordingly.
This cause is reversed.
It is, therefore, ordered that appellant recover of appellee his costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Anne L. Kilbane, J., concurs.
MICHAEL J. CORRIGAN, A.J., Dissents with Separate DissentingOpinion.
[1] R.C. 2913.51, a fourth degree felony.
[2] R.C. 2925.03, a fifth degree felony.
[3] R.C. 2903.12, a felony of the fourth degree.
[4] It is agreed that defendant's guilty plea on June 17, 2002, to aggravated assault was in conformity with Crim.R. 11(C). He was sentenced on July 11, 2002. The sentence was to run concurrent with the federal sentence.
[5] The record shows the court explained to defendant that the law required him "to go through a whole series of questions here." In the general colloquy that followed, however, the court never specified the rights defendant was waiving. Rather, defendant had questions of a different nature. Tr. at 76.
[6] Crim.R. 11(C) provides, in pertinent part: "(2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following: (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing. (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence. (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself."
[7] Being informed about one's eligibility for probation is an example of a non-constitutional right.
[8] III. The trial court erred when it sentenced appellant to maximum sentences without making the appropriate findings.