JOURNAL ENTRY AND OPINION
{¶ 1} Defendant, Antonio Lewis, appeals his plea and sentence in three cases. He pleaded to the first two cases in July 2003, and to the last case in October 2003. The first two cases had been set for sentencing, but after he was indicted on the third case, the court delayed sentencing until defendant could enter his plea on the third case.
 {¶ 2} In case number 428541, he was charged with two counts of forgery and two counts of uttering, and he pleaded guilty to two counts of forgery. In case number 428542, he was charged with two counts of theft, one count of forgery and one count of uttering, and he pleaded guilty to one count of theft and one count of forgery.
 {¶ 3} Finally, in case number 440433, he was charged with fourteen counts: one count of theft; one count of escape; one count of forgery; one count of uttering; and nine counts of receiving stolen property. He pleaded guilty to all but one count of receiving stolen property; in return, the escape charge was reduced from a third degree felony to attempted escape, a fourth degree felony.
 {¶ 4} Defendant was sentenced on all three cases on the day he entered his plea in the third case. The court imposed a sentence of nine months on each of the two counts in the first case, to run concurrently; nine months on each of the two counts in the second case, also to run concurrently; and fifteen months on a theft charge and six months on the remaining counts in the third case, also to run concurrently. The court ordered that the sentences in each case run consecutively, however, to the sentences in each of the other two cases, for a total of 33 months.
 {¶ 5} Now appealing both from his pleas and from his consecutive sentences, defendant states two assignments of error. The first states:
I. Trial court erred in accepting appellant's plea of guiltyas it was not entered knowingly, intelligently and voluntarily.
 {¶ 6} Defendant claims that his plea was not voluntarily, intelligently and knowingly given because the trial court did not apprise him of the nature of the charges he was pleading to. Specifically, he argues that the trial court failed to adequately explain the offenses he was charged with.
 {¶ 7} Crim.R. 11 outlines the steps the trial court is required to follow in accepting a guilty plea:
{¶ 8} (2) In felony cases the court may refuse to accept aplea of guilty or a plea of no contest, and shall not accept aplea of guilty or no contest without first addressing thedefendant personally and doing all of the following:
 (a) Determining that the defendant is making the pleavoluntarily, with understanding of the nature of the charges andof the maximum penalty involved, and, if applicable, that thedefendant is not eligible for probation or for the imposition ofcommunity control sanctions at the sentencing hearing.
 (b) Informing the defendant of and determining that thedefendant understands the effect of the plea of guilty or nocontest, and that the court, upon acceptance of the plea, mayproceed with judgment and sentence.
(c) Informing the defendant and determining that the defendantunderstands that by the plea the defendant is waiving the rightsto jury trial, to confront witnesses against him or her, to havecompulsory process for obtaining witnesses in the defendant'sfavor, and to require the state to prove the defendant's guiltbeyond a reasonable doubt at a trial at which the defendantcannot be compelled to testify against himself or herself.
 {¶ 9} The underlying purpose of this rule is to provide the defendant with enough information to allow him to make a voluntary and intelligent decision concerning whether or not to plead guilty. State v. Fort, Cuyahoga App. No. 80604, 2002-Ohio-5068 ¶ 24, citing State v. Ballard (1981),66 Ohio St.2d 473, 479-480.
 {¶ 10} In making that decision, a defendant has an irrevocable right to be apprised of his constitutional rights, which are listed in Crim.R. 11(C)(2):
{¶ 11} (2) In felony cases the court may refuse to accept aplea of guilty or a plea of no contest, and shall not accept aplea of guilty or no contest without first addressing thedefendant personally and doing all of the following:
 (a) Determining that the defendant is making the pleavoluntarily, with understanding of the nature of the charges andof the maximum penalty involved, and, if applicable, that thedefendant is not eligible for probation or for the imposition ofcommunity control sanctions at the sentencing hearing.
(b) Informing the defendant of and determining that thedefendant understands the effect of the plea of guilty or nocontest, and that the court, upon acceptance of the plea, mayproceed with judgment and sentence.
(c) Informing the defendant and determining that the defendantunderstands that by the plea the defendant is waiving the rightsto jury trial, to confront witnesses against him or her, to havecompulsory process for obtaining witnesses in the defendant'sfavor, and to require the state to prove the defendant's guiltbeyond a reasonable doubt at a trial at which the defendantcannot be compelled to testify against himself or herself.
 {¶ 12} As this court stated in Cleveland v. Wanzo (1998),129 Ohio App.3d 664, 668,
{¶ 13} "[t]he court, when informing a defendant of the effectof a plea of guilty, no contest or not guilty, pursuant toCrim.R. 11(E), should advise the defendant of his right to atrial by jury or to the court; the burden upon the prosecution toprove his guilt beyond a reasonable doubt if he were to go totrial; his right to cross-examine the witnesses called againsthim; his right not to testify; and his right to subpoena anywitness he may have in his own defense. The court should furtheradvise the defendant that, if he pleads no contest, the courtwill make a finding with regard to the defendant's guilt orinnocence, based upon an explanation of the circumstances as theyare set forth in the complaint, as they are presented by theprosecution, or as they are presented by the complainant." Id.This statement provides a comprehensive list of what trial courtsshould follow in its "meaningful dialogue" with defendants.
 {¶ 14} Id. quoting Toledo v. Chiaverini (1983),11 Ohio App.3d 43, 44. See, also, State v. Ballard (1981),66 Ohio St.2d 473.
 {¶ 15} Because these rights are protected by the Constitution, the court must strictly follow the requirement that defendants be fully informed of these rights prior to accepting a plea. In the case at bar a review of the plea hearing transcripts shows that the trial court strictly complied with this requirement. Defendant has not alleged, however, that he was not informed of these rights. His focus is on other rights.
 {¶ 16} The courts are not required, however, to strictly comply with the rule for rights not protected by the Constitution: for example, to be informed of the elements of the crime (State v. Kramer, Mahoning App. No. 01-C.A.-107, 2002-Ohio-4176)); to be informed of ineligibility for probation following the plea, provided defendant is aware of his ineligibility (State v. Stewart (1977), 51 Ohio St.2d 86;State v. Nero, (1990), 56 Ohio St.3d 106); to be informed that consecutive terms may result from pleas to two different indictments (State v. Johnson (1988), 40 Ohio St.3d 130); to challenge the indictment (State v. Bird (1998),81 Ohio St.3d 582). Instead, a reviewing court determines whether the trial court substantially complied with the requirements of the rule.
{¶ 17} Under the broader standard for rights not protected bythe constitution, reviewing courts consider whether the trialcourt substantially complied with the requirements of Crim.R.11(C)(2) and whether the defendant subjectively understood theimplications of his or her plea and the nature of the rights heor she was waiving. State v. Nero (1990), 56 Ohio St.3d 106,108, 564 N.E.2d 474; Stewart, supra at 93. The Ohio SupremeCourt has observed that there is no easy or exact way todetermine what someone subjectively understands. State v.Carter (1979), 60 Ohio St.2d 34, 38, 14 Ohio Op.3d 199,396 N.E.2d 757. Accordingly, "if the defendant receives the properinformation, then we can ordinarily assume that he understandsthat information. [In deciding whether the defendant had therequired information], we look at all the particular facts andcircumstances surrounding the case." Id. at 38.
 {¶ 18} Fort, supra, ¶ 26.
 {¶ 19} For substantial compliance, "[t]he trial court need not advise the defendant of the elements of the crimes; rather, it is sufficient if the totality of the circumstances warrant the trial court in making a determination the defendant understands the charges." State v. Watson, Cuyahoga App. No. 82582, 2003-Ohio-5815 ¶ 22, citing State v. Calvillo (1991),76 Ohio App.3d 714, 719. See, also, State v. Carter (1979),60 Ohio St.2d 34.
 {¶ 20} A review of the transcripts from defendant's two plea hearings shows that the trial court also substantially complied with the requirement that defendant be fully informed of those rights not protected by the Constitution, for example, being informed of the nature of the charges against him. The court recited each charge against defendant individually and asked defendant after each charge whether he understood what the charge was. Defendant each time affirmed that he understood what the charge was.
 {¶ 21} Defendant, citing State v. Hawk (1977),55 Ohio App.2d 231 and Henderson v. Morgan (1976), 426 U.S. 637, claims that the trial court's inquiry of defendant's understanding of the charges was inadequate. He argues that the totality of the circumstances shows that he did not subjectively understand the implication of his plea. Defendant fails, however, to cite to any portion of the record to support his allegation. "The court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based * * *." App.R. 12(A)(2).
 {¶ 22} Hawk, however, is distinguishable from the case at bar because the trial court in Hawk, unlike the trial court in the case at bar, failed to ask the defendant whether he understood the charges against him prior to accepting his plea. Additionally, in Hawk, the trial court failed to inform the defendant of a constitutionally protected right: that he could not be compelled to testify against himself. Hawk, therefore, is not applicable to this case.
 {¶ 23} A close review of both plea transcripts shows that the court clearly stated the charges against defendant and that, after each charge had been presented, defendant affirmed he understood the nature of the charge. Nothing in the record indicates that he did not understand this process. Accordingly this assignment of error is without merit.
 {¶ 24} For his second assignment of error, defendant states:
{¶ 25} The record does not support the trial court's findingsto support consecutive sentencing.
 {¶ 26} Defendant claims that although the court made the necessary findings when it imposed consecutive sentences, "[t]he record below does not support the finding by sufficiently showing that [defendant's] history of criminal conduct demonstrates a need for consecutive sentences to protect the public." Appellant's brief at 4. He argues that several theft-related and robbery convictions do not justify a 33-month sentence.
 {¶ 27} The imposition of consecutive sentences is controlled by R.C. 2929.14(E)(4) and R.C. 2929.19(B)(2)(c). Before imposing consecutive sentences, the trial court must make certain statutorily required findings and give its reasons for those findings. It must find that consecutive sentences are necessary either to protect the public from future harm or to punish the offender. It must also find that consecutive sentences are not disproportionate both to the seriousness of the offender's conduct and to the danger the offender presents to the public. Further, the court must find one of the following: that the multiple offenses were committed while the defendant was awaiting sentencing, on probation or parole, or on post-release control, or the harm caused by the offender was so great that no single term would adequately reflect the offender's conduct, or that the offender's criminal history shows that the consecutive sentences are necessary to protect the public from future harm.
 {¶ 28} The procedure a trial court must follow when imposing consecutive sentences is clearly laid out by the Ohio Supreme Court in State v. Comer (2003), 99 Ohio St.3d 463: "a trial court is required to make its statutorily enumerated findings and give reasons supporting those findings at the sentencing hearing." Comer, paragraph one of the syllabus. Further, theComer Court requires the trial court to create an adequate record in the sentencing hearing to provide for a meaningful review for the appellate court. For that purpose the Supreme Court also specified that "a trial court must clearly align each rationale with the specific finding to support its decision to impose consecutive sentences. These findings and reasons must be articulated by the trial court so an appellate court can conduct a meaningful review of the sentencing decision." State v. Comer
(2003), 99 Ohio St.3d 463 ¶ 21, citation omitted.
 {¶ 29} The trial court in the case at bar enunciated each required finding and gave its reason for each finding in a comprehensible, organized manner.
 {¶ 30} After imposing the individual sentences in the three cases, the court found that defendant continued to engage in a course of criminal conduct by committing these crimes and that his crimes greatly affected others in their credit histories and their peace of mind. Stating that consecutive sentences were necessary to protect the public from future crimes, the court noted that, although defendant's crime spree had slowed down, it had continued. The court also pointed out that defendant had just been released from prison at the time he committed the first offense and that he committed a second offense three months later. Tr. at 84. The court clearly aligned, therefore, its finding that consecutive sentences were necessary to protect the public with its reason, that defendant had not stopped committing crimes even immediately after being released from prison.
 {¶ 31} The trial court then stated that it found it necessary to run the sentences consecutively to punish defendant. Again, the court clearly aligned this finding with its reasons for that finding: not only that his conduct hurt and distressed his victims, but also that even after one of the victims had obtained a new credit card number, he used the new number to defraud her again. The court commented on how this action affected the victim. The court also pointed out that another of the victims was defrauded in the amount of nearly $1,500.
 {¶ 32} The court next found that consecutive sentences were not disproportionate to the seriousness of defendant's conduct or to the danger he posed to the community. The court then gave its reasons for these findings: that there were different victims, that he was unrelated to the victims, that he caused the victims harm, and that the crimes occurred over a series of months. Tr. at 85. The court emphasized the continuous nature of the crimes along with the fact that defendant had so many victims.
 {¶ 33} Finally, the court found that the harm caused by defendant's crimes was so great that a single prison term would not adequately reflect the seriousness of defendant's offense. The court again noted how serious the effects of these crimes were on the victims. Defendant agreed when the court asked him whether he would consider credit fraud harmful to him if he were the victim. The court also found that defendant's "history of criminal conduct" made "multiple terms necessary for the protection of the public." Tr. at 86. Giving its reasons for this finding, the court noted the extensive period of time, over almost a year, in which defendant's crime spree occurred. Citing this reason, the court again stated that "consecutive sentences are necessary to protect the public from future crimes." Tr. at 86. The court then delineated in detail the harm suffered by the victims, including the great number of people harmed, the victims' concerns and troubles with their credit histories, the difficulty the victims will encounter when they try to buy a car or home or otherwise use their credit, and the accelerated pace with which defendant's credit card fraud crime spree had proceeded. Tr. at 87. Thus the court considered the impact upon the victims as a result of defendant's credit card fraud and the resulting destruction of their credit ratings.
 {¶ 34} Again addressing the finding of proportionality of consecutive sentences to the seriousness of the crime and the danger posed to the community, the court noted that the victims' lack of awareness of defendant's use of their credit cards caused as great a shock to them when they realized what defendant had done as if he had just taken their wallets out of their pockets. The court noted that a silent crime such as this one could greatly cause monetary damage and harm to the reputations of the victims. Tr. at 87-88. The court very precisely and thoroughly aligned its findings and reasons for imposing consecutive sentences.
 {¶ 35} Although defendant argues that the record does not support the trial court's findings and reasons, we find that the carefully articulated findings and reasons the court gave support consecutive sentences. Accordingly, this assignment of error is overruled.
Affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Calabrese, Jr., J., Concurs.
 Celebrezze, Jr., P.J., Concurs in judgment only.