JOURNAL ENTRY AND OPINION
{¶ 1} In this consolidated appeal of five different felony cases, defendant seeks to overturn his guilty pleas to fifteen offenses. Defendant also appeals the sentences imposed by the trial court.
 {¶ 2} In January and February 2004, defendant pled guilty to possession of criminal tools (a fourth degree felony) in violation of R.C. 2923.24.[1] In a separate case,[2] he pled guilty to receiving stolen property, a motor vehicle (a fourth degree felony) and receiving stolen property (a fifth degree felony). Both offenses were in violation of R.C. 2913.51. Defendant also pled guilty to another charge of receiving stolen property and theft in violation of R.C. 2913.02 (both fifth degree felonies).[3] Defendant also entered guilty pleas to three counts of forgery in violation of R.C. 2913.31, and three counts of theft, R.C. 2913.02, (all fifth degree felonies).[4] In his last case,[5] defendant pled guilty to two counts of breaking and entering in violation of R.C. 2911.13
(fifth degree felonies) and two counts of theft in violation of R.C. 2913.02 (both first degree misdemeanors).
 {¶ 3} On February 18, 2004, a sentencing hearing was held for all five cases. With the exception of his convictions for the two first degree misdemeanor theft offenses,[6] defendant received a minimum term of six months on each of the thirteen remaining convictions. The court ordered each six-month term consecutive to one another, for a total prison term of five and one-half years. Defendant was also ordered to pay restitution to the victims of each crime.
 {¶ 4} In this timely appeal, defendant presents six assignments of error.[7]
"I. THE APPELLANTS PLEAS WERE NOT MADE KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY WHERE THE TRIAL COURT FAILED TO ADVISE THE APPELLANT OF THE PENALTIES ASSOCIATED WITH EACH OF THE CHARGES."
 {¶ 5} Defendant argues that none of his thirteen guilty pleas[8] was voluntarily, intelligently and knowingly given because the trial court never advised him of the maximum penalties associated with each conviction.
 {¶ 6} Crim.R. 11(C)(2) describes the procedure a trial court must follow before it accepts a defendant's guilty plea:
"In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:
"(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself."
 {¶ 7} The rule requires a defendant to have all the information necessary to make a voluntary and intelligent decision about whether or not to plead guilty. State v. Lewis, Cuyahoga App. No. 83999,2004-Ohio-5977, at ¶ 9.
 {¶ 8} In deciding whether a defendant's plea is infirm under Crim.R. 11, courts distinguish between the constitutional and non-constitutional rights a defendant must be advised of. Id.
"As stated in Crim.R. 11(C)(2)(c), the guaranteed federal constitutional rights are: the privilege against self-incrimination, the right to trial by jury, the right to confront one's accusers, and the right of compulsory process of witnesses. Boykin v. Alabama (1969),395 U.S. 238, 23 L.Ed.2d 274, 89 S.Ct. 1709; State v. Nero (1990),56 Ohio St.3d 106, 564 N.E.2d 474; State v. Sample, Cuyahoga App. No. 81357, 2003-Ohio-2756. The rule requires the trial court to engage in a personal and meaningful dialogue with the defendant informing him of the constitutional guarantees he waives by entering a guilty plea. When a court advises a defendant of his constitutional rights, strict compliance with Crim.R. 11(C) is mandatory; however, a court need only substantially comply with the non-constitutional requirements of Crim.R. 11(C)(2).Sample, supra."
State v. Robinson, Cuyahoga App. No. 82801, 2004-Ohio-740, at ¶ 23;Cleveland v. Wanzo (1998), 129 Ohio App.3d 664, 669-670,718 N.E.2d 982.
 {¶ 9} The trial court must also tell defendant about "the nature of the charge and of the maximum penalty[9] involved." Crim. R. 11(C)(2)(a). In the case at bar, defendant concedes that advising him of the maximum penalty associated with each of his convictions does not fall under the constitutional rights listed in Crim.R. 11(C) and, therefore, only substantial compliance must be demonstrated. State v. Griggs,103 Ohio St.3d 85, 87, 2004-Ohio-4415.
 {¶ 10} "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." (Citations omitted.) State v.Nero (1990), 56 Ohio St.3d 106, 108, 564 N.E.2d 474. Moreover, a defendant "who challenges his guilty plea on the basis that it was not knowingly, intelligently, and voluntarily made must show a prejudicial effect." Id., citing Stewart, at 93. "The test is whether the plea would have otherwise been made." Id.
 {¶ 11} In the case at bar, defendant argues that the trial court did not substantially comply with Crim. R. 11(C) because it did not inform him about the maximum penalties he faced if he entered guilty pleas.
 {¶ 12} The January 12, 2004 plea hearing transcript includes the following colloquy:
"THE COURT: We're here on Case Numbers 291352, 348800 and 446974. It's State of Ohio v. Steven Scott. What's the State's position in these cases?
MR. ZARZYCKI: Your Honor, after discussions with defense counsel, Leif Christman and full discovery having been provided, it's my understanding we've come to an agreement with respect to a plea. I'll read that.
THE COURT: You may proceed with that.
MR. ZARZYCKI: With respect to Case Number 291352, it's my understanding the defendant, Steven Scott, will be pleading guilty to count 2,possession of criminal tools, in violation of Revised Code Section 2923.24,a felony of the fourth degree under pre-1996 law, punishable by 6, 12 or18 months in prison and up to a $2,500 fine.
With that plea of guilt forthcoming, the State moves to nolle Count 1.
With respect to Case Number 348800, it's my understanding the defendant, Mr. Scott, will plead guilty to Count 1, receiving stolenproperty in violation of 2913.51, a felony of the fifth degree or of thefourth degree, punishable by six to 18 months in prison, and up to a$5,000 fine.
He'll also plead guilty to count 2, receiving stolen property,under violation of Revised Code Section 2913.51, a felony of thefifth degree, punishable by six to 12 months in prison and up toa $2,500 fine.
With those pleas of guilt forthcoming, the State would then move to nolle all remaining counts, 3 through 7.
In Case Number 446958, it's my understanding the defendant will plead guilty to count 1, receiving stolen property, in violation of 2913.51, afelony of the fifth degree, and Count 3, theft, in violation of 2913.02,also a felony of the fifth degree. Finally, in Case Number 4 —
MR. CHRISTMAN: Can I interrupt real quick? You're going to dismiss Count 2, forgery on that case
MR. ZARZYCKI: My apologies. With those pleas of guilty Count 1 and 3 forthcoming, the State moves to dismiss and nolle Count 2 in Case 446958.
Now on 446974, my understanding is the defendant, Mr. Scott, will plead guilty to Counts 1, 4 and 9, those three counts being theft, in violationof Revised Code Section 2913.02, all felonies of the fifth degree.
 Also the defendant will be pleading guilty to Counts 2, 5 and 7, allforgeries, in violation of 2913.31, also felonies of the fifth degree.
And also with these, an order of restitution will be agreed upon in each of these cases, your Honor.
And in that case again 446974, with the pleas of guilty to those six counts, 1, 2, 4, 5, 9 and 7, the State would then move to nolle all remaining counts.
THE COURT: Thank you. It's my understanding if the Court were to overcome the presumption against imprisonment, or were to imprison Mr. Scott, he'd be subject to Post Release control of up to three years, and in the event he were to commit an additional felony while on Post Release control, he could be subject to additional incarceration; is that correct.
MR. ZARZYCKI: Yes, your Honor.
THE COURT: What's the defendant's position?
MR. CHRISTMAN: Your Honor, the State of Ohio has accurately outlined the plea agreements that have been reached in this case.
I've met with the State of Ohio on numerous occasions with regard to these four matters. They've provided to me full and open discovery.
I've explained to my client his Constitutional rights. It's my desire with the Court's permission to withdraw the previously entered pleas of not guilty and enter pleas of guilt to the charges as again outlined by the State of Ohio. Thank you
THE COURT: Thank you. Mr. Scott, did you understand everything the prosecutor and your attorney just said?
THE DEFENDANT: Yes, your Honor. (Emphasis added.)"
Tr. 3-7.
 {¶ 13} On this record, we conclude that the trial court substantially complied with the requirement that defendant be advised of the maximum penalty for each offense charged against him. Before he entered his guilty pleas, the court advised defendant that each fourth degree felony carried a potential
 {¶ 14} maximum sentence of eighteen months and each fifth degree felony carried a possible maximum prison term of twelve months. When asked if he understood the possible sentences he faced, defendant answered affirmatively.
 {¶ 15} The totality of the circumstances shows that defendant understood the potential maximum penalty for each offense to which he pled guilty. Defendant's first assignment of error is overruled.
"II. THE TRIAL COURT ERRED WHEN IT ORDERED CONSECUTIVE SENTENCES WITHOUT FURNISHING THE NECESSARY FINDINGS AND REASONS REQUIRED BY R.C.2929.14(E)(4) AND R.C. 2929.19(B)(2)."
 {¶ 16} Defendant claims that although the court made the necessary findings when it imposed consecutive sentences, "it failed to provide its reasons for its findings." Defendant's Brief at 4.
 {¶ 17} The imposition of consecutive sentences is controlled by R.C.2929.14(E)(4) and R.C. 2929.19(B)(2)(c). Before imposing consecutive sentences, the trial court must make certain statutorily required findings[10] and give its reasons for those findings. R.C.2929.19(B)(2)(c). A trial court's failure to provide the required reasons underlying each finding constitutes reversible error. State v. Grider,
Cuyahoga App. No. 80617, 2002-Ohio-3792, at ¶ 15; State v. Comer
(2003), 99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E.2d 473. In addition, "a trial court must clearly align each rationale with the specific finding to support its decision to impose consecutive sentences. These findings and reasons must be articulated by the trial court so an appellate court can conduct a meaningful review of the sentencing decision." State v. Lewis, Cuyahoga App. No. 83999, 2004-Ohio-5977, citing Comer, supra., at ¶ 21.
 {¶ 18} In the case at bar, the trial court made all the required findings. The court, however, gave only one reason in support of those numerous findings. The court stated that consecutive terms were necessary because "while on a one-year probation to Virginia Court, in Case Number 12992, for credit card theft, the defendant committed twelve new offenses while on probation." Tr. 32. This singular rationale does not comport with the trial court's obligation to align each of its separate findings with a corresponding reason in order to justify imposing consecutive prison terms. Accordingly, defendant's second assignment of error is sustained. Defendant's third and fourth assignments of error are addressed together because they involve the issue of restitution:
"III. THE TRIAL COURT ERRED IN ORDERING THE PROBATION DEPARTMENT TO DETERMINE THE AMOUNT OF RESTITUTION ALLEGEDLY DUE THE VICTIMS.
"IV. THE TRIAL COURT ERRED IN ORDERING MR. SCOTT TO PAY RESTITUTION WITHOUT CONSIDERING HIS ABILITY TO PAY AS REQUIRED BY R.C. 2929.19(B)(6)."
 {¶ 19} In each of these assignments of error defendant contends that the trial court's order of restitution is flawed and thus requires reversal. Before addressing the merits of either argument, however, we observe an error not objected to or otherwise noted by defendant in the court below. And because defendant failed to object, we, sua sponte, address the error under a plain error standard.[11] State v. Williams
(1977), 51 Ohio St.2d 112, 364 N.E.2d 1364.
 {¶ 20} On appeal, this court evaluates a lower court's order of restitution under an abuse of discretion standard. State v. Berman,
Cuyahoga App. No. 79542, 2002-Ohio-1277, citing State v. Marbury (1995),104 Ohio App.3d 179, 661 N.E.2d 271.
 {¶ 21} When a defendant is ordered to pay restitution during sentencing, there "must be a due process ascertainment that the amount of restitution bears a reasonable relationship to the loss suffered." Statev. Williams (1986), 34 Ohio App.3d 33, 34, 516 N.E.2d 1270. When a court imposes restitution as part of a felony offender's sentence, it must be "based on the victim's economic loss." R.C. 2929.18(A)(1).[12]
An order of restitution is, therefore, "limited to the actual damage or loss caused by the offense of which the defendant is convicted."Williams, supra. The amounts claimed lost by a victim must be established with certainty. Id. "[W]here evidence of actual losses is not forthcoming from those claiming restitution the trial court abuses its discretion in ordering restitution." Marbury, supra., at 181, citing State v. Hansen,
(March 22, 1990), Cuyahoga App. No. 56778.
 {¶ 22} In the case at bar, we find plain error because neither the state nor any victims offered any evidence of compensable loss before the court ordered defendant to pay restitution. Therefore, the trial court's general order of restitution is not based on the actual losses suffered by any of the victims in defendant's five different felony cases. Accordingly, we conclude that the trial court abused its discretion in ordering defendant to pay restitution. Because we find plain error in the trial court's order of restitution, we do not address the merits of defendant's assignments of error, which are now moot. Defendant's third and fourth assignments of error are sustained, albeit for reasons that differ from those presented by defendant.
"V. THE TRIAL COURT FAILED TO MAKE A FINDING THAT THE DEFENDANT'S SENTENCE IS CONSISTENT WITH SIMILARLY SITUATED OFFENDERS."
 {¶ 23} Defendant argues that his consecutive sentences are not consistent with sentences imposed for similar crimes committed by similar offenders. R.C. 2929.11(B).
 {¶ 24} The task of assessing whether a defendant's sentence is consistent with similar crimes and similar offenders is not an easy one. As previously noted by this court:
"In Ohio Felony Sentencing Law, (5 Ed. 2001) 535, Section T4.51 Griffin and Katz see three tasks to achieving consistency: (1) that judges treat co-defendants consistently; (2) that judges maintain "records of their own sentences and * * * establish general sentencing policies for some common violation * * *"; and (3) that multi-judge courts "maintain information on sentences of various judges and even to establish sentencing policies or practices with respect to frequently recurring offenses."
Griffin and Katz add appellate review as the fourth means of achieving consistency. However, they acknowledge that appellate courts "cannot be expected to have reliable information about sentencing practices outside of their own districts" "until data is systematically collected and made available on a statewide basis * * *." I would add there is an additional problem in each appellate court independently developing its own data base. An appellate court is most likely to stumble when it undertakes its own research without giving any opportunity to parties to challenge its conclusions. Moreover, it is inefficient to have each appellate court in Ohio separately develop a computer program for such a project. Currently, funding is too minimal for public defenders, prosecutors, and each court to perform this research independently.
Any data base that is developed, furthermore, must provide universal access. Griffin and Katz cite the case of State v. Troyer (Mar. 7, 2000), Cuyahoga C.P. No. CR-379460 in which the prosecutor supplied the court with a list of seventy-nine prior sentences for the same statutory offense. How would a solo practitioner defend against such a lengthy list? What resources are available and economically feasible for opposing counsel to insure that relevant cases were not omitted and that all the cases cited were similar? Because of the large numbers of similar offenses likely, especially in a busy court such as Cuyahoga County Common Pleas, a computer program with relevant factors designed by a neutral source is essential. Then both sides, along with the court, would have a reliable body of data they could rely upon.
Until that data is available and accessible, appellate courts will be able to address the principle of consistency only to a very limited degree."
State v. Haamid, Cuyahoga App. Nos. 80161, and 80248, 2002-Ohio-3243 (Karpinski, J., concurring), at ¶¶ 31-34. See also State v. Murrin,
Cuyahoga App. No. 83482, 2004-Ohio-6301, at ¶ 19.
 {¶ 25} In the case at bar, the record demonstrates that the trial court considered the requisite statutory factors and then weighed those factors before imposing sentence upon defendant. The court noted defendant's prior criminal history, which began in 1981. It
 {¶ 26} also noted defendant's prior conviction for conspiracy to commit bank robbery along with eight other prior convictions. Defendant had previously served a prison term as well. The court further noted that several of the instant offenses were committed while defendant was on probation. Defendant was sentenced to the minimum term for each offense and those terms were run consecutive to one another. Defendant received an aggregate sentence of five and one-half years.
 {¶ 27} On this record, this court finds nothing to demonstrate that defendant's five and one-half-year prison term is either inconsistent with or disproportionate to sentences that have been imposed on similar offenders who have committed similar offenses.
 {¶ 28} Finally, we reject defendant's reliance on State v. Lyons,
Cuyahoga App. No. 2002-Ohio-3424. In Lyons, the defendant was sentenced to a concurrent five- and six-year prison term for his convictions of a first and second degree felony. Both sentences exceeded the possible minimum sentence the court could have imposed. On appeal, Lyons argued that he should have received a minimum sentence pursuant to R.C. 2929.14
(B)[13] because he had never served a prison term in the past. Lyons further argued that his sentence was not consistent with sentences received by similar offenders of similar offenses pursuant to R.C. 2929.11(B). This court agreed and remanded the case for resentencing.
 {¶ 29} Unlike the defendant in Lyons, however, defendant in the case at bar had previously served a prison term and, therefore, the trial court did not have to consider a minimum term pursuant to R.C. 2929.14(B). Moreover, defendant here also has numerous prior convictions and committed the instant offenses while he was on probation. On this record, we cannot conclude that the trial court failed to adhere to the goal of felony sentencing to achieve consistency, not uniformity.Haamid, supra. Accordingly, we do not conclude that defendant's five and one-half-year sentence is inconsistent with similar offenders who have committed similar offenses. Defendant's fifth assignment of error is overruled.
"VI. THE IMPOSITION OF CONSECUTIVE SENTENCES IN THE INSTANT CASE WAS DONE IN VIOLATION OF MR. SCOTT'S SIXTH AMENDMENT RIGHT TO TRIAL BY JURY."
 {¶ 30} Defendant argues that his consecutive sentences are unconstitutional under the U.S. Supreme Court decision in Blakely v.Washington (2004), U.S., 124 S.Ct. 2531, 159 L.Ed.2d 403. This argument was recently addressed in this court's en banc decision of State v. Lett
(May 31, 2005), Cuyahoga App. Nos. 84707 and 84729. In Lett, this court held that R.C. 2929.14(E), which governs the imposition of consecutive sentences, does not implicate the Sixth Amendment as construed inBlakely.
 {¶ 31} Accordingly, in conformity with that opinion, we reject
 {¶ 32} defendant's argument and overrule his sixth assigned error.[14]
 {¶ 33} This matter is remanded so that the trial court can vacate its order of restitution.
Judgment accordingly.
It is ordered that appellee and appellant split the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, P.J., and Celebrezze, Jr., J., concur.
[1] Case No. CR-291352.
[2] Case No. CR-348800.
[3] Case No. CR-446958.
[4] Case No. CR-446974.
[5] Case No. CR-446671.
[6] Case No. CR-446671. The sentences for these two convictions was recorded as time defendant had already served.
[7] At page v of his brief, defendant lists seven assignments of error. On that page, his fifth assignment of error reads: "THE TRIAL COURT ERRED IN FINDING MR. SCOTT TO BE A PROBATION VIOLATOR IN VIRGINIA CASE NO. 12992 AND IMPOSING A SIX MONTH SENTENCE FOR THE ALLEGED VIOLATION." Because this assignment of error does not appear again nor is it argued in defendant's brief, we do not address it. Further, for the sake of coherency, some of the assignments of error are addressed out of sequence.
[8] Defendant is not appealing his guilty pleas in Case No. CR4-46671.
[9] The term `the maximum penalty' is understood as referring to a single penalty. "In the context of `the plea' to `the charge,' the reasonable interpretation of the text is that `the maximum penalty' is for the single crime for which `the plea' is offered." State v. Johnson
(1988), 40 Ohio St.3d 130, 133, 532 N.E.2d 1295.
[10] The trial court must find "that consecutive sentences are necessary either to protect the public from future harm or to punish the offender. It must also find that consecutive sentences are not disproportionate both to the seriousness of the offender's conduct and to the danger the offender presents to the public."
The court must also find one of the following: "that the multiple offenses were committed while the defendant was awaiting sentencing, on probation or parole, or on post-release control, or the harm caused by the offender was so great that no single term would adequately reflect the offender's conduct, or that the offender's criminal history shows that the consecutive sentences are necessary to protect the public from future harm."
[11] Crim.R. 52(B) states:
(B) Plain Error. Plain errors or defects affecting substantial right may be noticed although they were not brought to the attention of the court.
[12] R.C. 2929.18. Financial sanctions; restitution
(A) Except as otherwise provided in this division and in addition to imposing court costs pursuant to section 2947.23 of the Revised Code, the court imposing a sentence upon an offender for a felony may sentence the offender to any financial sanction or combination of financial sanctions authorized under this section or, in the circumstances specified in section 2929.32 of the Revised Code, may impose upon the offender a fine in accordance with that section. Financial sanctions that may be imposed pursuant to this section include, but are not limited to, the following:
(1) Restitution by the offender to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss. If the court imposes restitution, the court shall order that the restitution be made to the victim in open court, to the adult probation department that serves the county on behalf of the victim, to the clerk of courts, or to another agency designated by the court. If the court imposes restitution, at sentencing, the court shall determine the amount of restitution to be made by the offender. If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense. If the court decides to impose restitution, the court shall hold a hearing on restitution if the offender, victim, or survivor disputes the amount. All restitution payments shall be credited against any recovery of economic loss in a civil action brought by the victim or any survivor of the victim against the offender.
If the court imposes restitution, the court may order that the offender pay a surcharge of not more than five per cent of the amount of the restitution otherwise ordered to the entity responsible for collecting and processing restitution payments.
The victim or survivor may request that the prosecutor in the case file a motion, or the offender may file a motion, for modification of the payment terms of any restitution ordered. If the court grants the motion, it may modify the payment terms as it determines appropriate.
[13] This statute provides, in relevant part:
* * * if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender and if the offender previously has not served a prison term, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others.
[14] I separately note, however, that because I believe the en banc procedure this court used in Lett is unconstitutional and dissented for that reason, as well as on the merits, I reluctantly follow this court's decision while I await a ruling from the Ohio Supreme Court on the issue.